### SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee–Cross–Appellant,

v.

### Price WATERHOUSE, Daniel Jerbasi, Benjamin Leroy, Benjamin Perks, Defendants,

### Richard L. Kaufman, Defendant–Appellant–Cross–Appellee.

Nos. 1787, 2013, Dockets 94–6045, 94–6069.

United States Court of Appeals, Second Circuit.

Argued June 23, 1994.

Decided Nov. 30, 1994.

---

806

See also, 797 F.Supp. 1217.

James A. Brigagliano, Asst. Gen. Counsel, Washington, DC (S.E.C., Simon M. Lorne, Gen. Counsel, Richard M. Humes, Associate Gen. Counsel, Linda B. Stirling, Sr. Sp. Counsel, Valerie G. Preiss, Sr. Counsel, Paul Gonson, Sol., of counsel), for plaintiff-appellee-cross-appellant.

Richard H. Silberberg, New York City (Dorsey & Whitney, Robert G. Manson, of counsel), for defendant-appellant-cross-appellee Richard L. Kaufman.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

When the government of the United States engages in litigation against other parties and takes positions that are not "substantially justified," the prevailing adversary is entitled under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A. § 2412, (West 1994) to be compensated by the Government for "fees and other expenses" incurred in the litigation. This appeal raises various questions regarding the rights created by this

statute, especially as it applies to a *pro se* litigant.

After the dismissal of the Securities and Exchange Commission's action against Richard Kaufman, who defended himself *pro se*, Kaufman moved under the EAJA for attorney's fees and other expenses amounting to $1.8 million. Judge John E. Sprizzo, United States District Judge for the Southern District of New York, denied attorney's fees and statutory costs, but allowed certain expenses. Kaufman appeals from the part of the order that denied his claims; the SEC cross-appeals as to the part granted.

### Background

In 1983, the SEC began investigating to determine whether violations of the federal securities laws had been committed by AM International, Inc., ("AM"), Kaufman, who had been president of an AM division until 1981, and persons connected with Price Waterhouse & Co., which served as AM's accountants. At the time the investigation started, Kaufman had not been gainfully employed in the two years since he left AM. He asserts that he had received two job offers between 1981 and 1983, but did not accept either because of disagreements over compensation. He further contends that in mid–1983, when he learned of the pending SEC action, he ceased seeking employment so that he could pursue his defense full-time. He "determined that it would not be possible to defend himself in this lawsuit and simultaneously carry out the duties of the type of executive position which he had been seeking and for which he was qualified." The SEC filed an action against Kaufman and others in June 1985.

From 1985 to 1990, discovery and motion practice occurred. In 1990, a separate trial began against the Price Waterhouse defendants (not including Kaufman). In October 1990, during that trial (which eventually concluded with judgments in favor of the defendants on every claim), the SEC voluntarily dismissed the action against Kaufman, with prejudice.

Kaufman then demanded costs, expenses, and attorney's fees under the EAJA. The SEC took the position that (i) *pro se* litigants may not recover attorney's fees, and (ii) "costs" may not be awarded against the SEC. The SEC did not address whether the position of the United States had been "substantially justified," so that no fees or expenses were allowable under the EAJA; rather, it stated that it "reserved the right" to argue the point at a later time.

Judge Sprizzo ruled that Kaufman was not entitled to attorney's fees because he "suffered no loss of income as a result of this case."[1] As to costs, Judge Sprizzo held that they may not be awarded against the SEC. (No appeal is taken from that part of the ruling, and this court expresses no views on it.) Judge Sprizzo ruled, however, that Kaufman was entitled to expenses in the approximate amount of $17,600 for expenditures that do not fall within the category of costs.

On these cross-appeals, Kaufman contends the district court erred in denying him fees; the SEC argues that the district court erred in refusing to bifurcate and consider subsequently whether the SEC's position in the litigation was substantially justified, so that no fees or expenses could be awarded.

### Discussion

### I. Fees under the EAJA.

The fee-shifting provision of the EAJA, to the extent relevant to this appeal, provides that:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

. . . . .

(2) For the purposes of this subsection—

---

1. Kaufman moved for reconsideration, and asked for permission to submit further evidence to support the proposition that he did, in fact, forego valuable income to defend himself in the suit. The district court denied the motion for reconsideration.

(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees. . . .

28 U.S.C.A. § 2412(d)(1)(A), (d)(2)(A) (West 1994).

### A. Attorney's fees for pro se litigants

■ We consider first whether a *pro se* litigant may recover attorney's fees under this statute. In *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), the Supreme Court held that under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, a *pro se* litigant, even if the litigant is an attorney, may not recover attorney's fees. The court held that the term "attorney" contemplates an agency relationship that is absent in the *pro se* context.

Although we recognize that there are significant differences between 42 U.S.C. § 1988 and the EAJA, which are discussed below, as to the issue of whether the statutory provision for "attorney fees" presupposes the engagement of an attorney, we think the Supreme Court's decision in *Kay* should also control under the EAJA. *See West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 88, 111 S.Ct. 1138, 1141, 113 L.Ed.2d 68 (1991); *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n. 2, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989).

The courts of appeals that have ruled on this question under the EAJA have held that a litigant who does not hire an attorney is not entitled to reimbursement for attorney's fees.[2] *See, e.g., Hexamer v. Foreness*, 997

F.2d 93, 94 (5th Cir.1993); *Demarest v. Manspeaker*, 948 F.2d 655 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1298, 117 L.Ed.2d 520 (1992); *Merrell v. Block*, 809 F.2d 639, 642 (9th Cir.1987). We hold, under the reasoning of *Kay*, that a *pro se* litigant may not recover attorney's fees under the EAJA.[3]

Kaufman's reliance on *Sommer v. Sullivan*, 898 F.2d 895 (2d Cir.), *cert. denied*, 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 520 (1990), is misplaced. We did not say in *Sommer* that a *pro se* litigant was entitled to EAJA attorney's fees. We said merely that, even if other *pro se* litigants have such an entitlement, incarcerated *pro se* litigants do not.

### B. Fees and expenses

In the alternative, Kaufman argues that he should be able to recover for his time spent on the case under the provision of the EAJA that provides for the recovery of "fees and expenses," including expert witness fees and "the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case . . ." 28 U.S.C.A. § 2412(d)(2)(A).

■ His claim is made under two theories: first, that he had functioned as his own "expert" and was entitled to an expert witness fee; second, that he performed studies and analyses necessary to the preparation of his case and was entitled to recover the "reasonable cost" thereof. As to his claim for an expert fee,[4] we agree with the SEC that he never applied to the district court for recompense as an expert witness. As he did not

---

**2.** The SEC notes that "Since *Kay v. Ehrler*, numerous courts have addressed this issue, and we have identified no decision in which a court has awarded attorney's fees to a *pro se* litigant based on a federal fee-shifting statute."

**3.** We are unconvinced by Kaufman's attempts to distinguish the attorney's fees provision of the EAJA from that of other statutes. For example, he argues that the EAJA differs from § 1988 because under the EAJA the beneficiary of a fee award can be the defendant, as opposed to the plaintiff. Under § 1988 as well, however, a defendant is eligible to receive an award of attorney's fees. Furthermore, the EAJA's test for the

amount of the fees ("The amount . . . shall be based upon prevailing market rates for the kind and quality of the services furnished," 28 U.S.C.A. § 2412(C)(2)(A) (West 1994)), suggests that it contemplates an agency relationship with a licensed attorney.

**4.** Kaufman claims that "[t]he expert analysis embodied in his contribution to the pretrial order—akin to an expert report—demonstrated that the SEC could not prove its case against him, and ultimately led to the dismissal of all of the SEC's claims with prejudice."

preserve this contention in the proceeding below, he may not argue it on appeal.

■ Kaufman did, however, seek compensation for the value of his time spent in the study and analysis of matters in preparation for the litigation, making specific reference to the EAJA's paragraph (d)(2)(A) which defines "fees and expenses" to include "the reasonable cost of any study, analysis.... test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A).[5] His application related to time spent studying depositions and exhibits. Although the study and analysis of documentary evidence and testimony is often done by attorneys, it is not a task legally reserved to attorneys. One need not be an attorney to study evidence in preparation for litigation; indeed, attorneys often hire non-attorneys to perform such tasks. Accordingly, compensation is not barred by the *Kay* holding.

The district court denied compensation without discussing this provision of the EAJA, and did not decide whether any portion of Kaufman's work was "necessary for the preparation of [his] case." With respect to this aspect of his claim, my colleagues constituting a majority of this panel are of the view that Kaufman is precluded from such recovery because, as the result of his work on this case, he suffered neither loss of income nor consequential expenses (in the nature of hiring others to replace him in other activities). Though not doubting that a *pro se* litigant might suffer non-monetary burdens in successfully opposing the Government, they construe the "reasonable cost" of any necessary study or analysis to be limited to monetary cost. That is our holding on this issue.

From this holding, I respectfully dissent. In my view, the fact that a litigant suffered no loss of income or consequential expenses, although a factor, should not be a legal bar to an award under the EAJA of the reasonable non-monetary cost of necessary studies and analyses, given the purpose of the Act.

The purposes of the EAJA differ substantially from other fee-shifting statutes like § 1988. The latter is designed primarily to enable poor victims of abuse by state governments to bring actions seeking redress. *See Kay*, 499 U.S. at 436 n. 8, 111 S.Ct. at 1437 n. 8 (Congress "focused on the need of average citizens to be able to afford lawyers so that they could protect their rights in court"); *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992) (§ 1988 "was designed to allow private individuals a meaningful opportunity to vindicate civil rights violations"). The provisions of the EAJA, despite its somewhat misleading name, are designed to compensate victims of *unjustified* litigation by the Government from some of the burdensome expenses and costs to which they were subjected by the Government's taking of unreasonable positions. Awards under the EAJA are not made in favor of a plaintiff who merely prevails in some aspect of the litigation, as is the case under § 1988. To win an award under the EAJA, the litigant opposing the United States must not only prevail, but must show in addition that the position of the United States in the litigation was not "substantially justified." The Act essentially recognizes that abusive litigation tactics by the United States government, whether the Government appears in the role of plaintiff or defendant, can inflict great unjustifiable cost and expense. It is designed to furnish relief from such governmental litigation abuse.

The abused litigant, regardless whether represented by counsel, may be required to devote weeks, months, perhaps years, to studies and analyses that a court would find were necessary to that party's preparation for litigation. Such substantial expenditures of time can have a significant cost, regardless whether the party suffers expenditures or loss of income. Consider, as examples, a salaried university professor or research scientist who loses the opportunity to conduct important research or to produce significant academic writings, a top amateur athlete

---

**5.** The Supreme Court has held that expenses discussed in this provision are to be considered in addition to and separate from attorney's fees. The Court noted in *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 91, 111 S.Ct. 1138, 1143, 113 L.Ed.2d 68 (1991), that "If [under the EAJA] the reasonable cost of a 'study' or 'analysis'—which is but another way of describing nontestimonial expert services—is by common usage already included in the 'attorney fees,' ... a significant and highly detailed part of the statute becomes redundant."

whose skill is destroyed by inability to maintain training, a parent forced to forego devoting any substantial time to parenthood, a retiree whose retirement is consumed by projects necessary to conduct his or her defense. In each of these cases, the performance of the necessary preparatory work to defend against the Government's unjustified litigation imposes a substantial cost, albeit not in money. It is not so clear to me that Congress intended to withhold compensation for "costs" of this nature, inflicted by abusive Government litigation tactics.

The interpretation I advocate would not subject the public treasury to heavy burdens. First, because no award may be made unless the Government has litigated abusively, without even a substantial justification, this award will be made in rare cases; second, no award may be given for the time cost of studies and analyses unless the district court finds them to be "necessary for the preparation of the party's case"; third, the award is limited to "reasonable costs."

In my opinion, there should be a remand to the district court to determine whether any of Kaufman's preparatory work was "necessary" to the conduct of his defense and, if so, to allow him the "reasonable cost" thereof. The fact that, according to the district court's findings, he neither lost income nor incurred consequential expenses, would surely be pertinent in determining what was the reasonable cost he incurred. The majority, however, rules that it is preclusive. I respectfully note my disagreement.

## II. The SEC's cross-appeal.

 The SEC contends on its cross-appeal that the district court abused its discretion in not "bifurcating" the issues and allowing the SEC to demonstrate, in the event fees or

expenses were found otherwise awardable, that the SEC's position in the litigation was substantially justified. In response to Kaufman's initial petition for fees and expenses, the SEC argued that because of his *pro se* status, Kaufman was entitled to nothing. The Commission also noted that: "However, should the Court disagree that Kaufman's petition is barred, the Commission reserves the opportunity to address the substantial justification issue."

The SEC argues on appeal that "[i]n reserving the right to brief the issue of substantial justification, the Commission employed a procedure analogous to bifurcation of issues at trial under Rule 42(b) of the Federal Rules of Civil Procedure." This claim is wholly without merit. No rule of civil procedure affords a litigant the option unilaterally to inform a district court that certain issues will be briefed and decided in a subsequent round. The SEC could have requested *permission* of the district court to reserve the issue of substantial justification to a subsequent round;[6] it did not do so. Furthermore, the SEC neither moved for reconsideration on this issue after Judge Sprizzo awarded Kaufman $17,600, nor even mentioned its claim of substantial justification in responding to Kaufman's motion for reconsideration of the denial of his application for fees. There is no basis for its contention on appeal that the district court abused its discretion.[7] We therefore affirm.[8]

### Conclusion

The rulings of the district court are hereby affirmed.

---

6. *See* Fed.R.Civ.P. 42(b).

7. At oral argument before this panel, the SEC contended that at oral argument before the district court it had asked to brief the substantial justification issue but was denied the opportunity to do so. This argument was neither raised in the SEC's brief nor accompanied by any citation to the record. In any event, it is immaterial. As noted above, it is the court, and not the litigants, that sets the schedule for the briefing of the issues. Judge Sprizzo's denial of the SEC's untimely request was within his discretion.

8. This conclusion is further buttressed by the fact that the SEC bore the burden below. "[A]ttorney's fees under the EAJA must be awarded to the prevailing non-government party unless the court finds that the position of the United States in the pertinent litigation to have been 'substantially justified.' 28 U.S.C. § 2412(d)(1)(A)." *Federal Election Comm'n v. Political Contributions Data, Inc.*, 995 F.2d 383, 386 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994).