In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1025

EDWARD KRECIOCH,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 1121—**James B. Zagel**, *Judge.*

NOVEMBER 4, 2002, SUBMITTED*—DECIDED JANUARY 2, 2003

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* The Drug Enforcement Administration (DEA) seized personal property belonging to Edward Krecioch after he was arrested for cocaine trafficking in 1992. Krecioch pled guilty to the charges but later filed a collateral attack on the administrative forfeitures in district court. The district court granted summary judgment for the United States. On appeal, this court affirmed in part, and reversed and remanded in part. After the nec-

* The parties waived oral argument in this case; therefore, the appeal is submitted on the briefs and the record. See Federal Rule of Appellate Procedure 34(f).

essary hearings on remand, Krecioch submitted a bill of costs for $3,359.00, which included $2,800.00 for paralegal services. The district court granted the bill of costs in part ($455.00), but denied the remainder of the requested fees. Krecioch appeals, and for the reasons stated below, we affirm the district court's decision.

## I. BACKGROUND

This litigation began on July 8, 1992, when the DEA seized $2,150.00 in cash, a 1989 Lincoln limousine, and a 1988 Chevrolet Blazer from Billy T's Limousine Service, the headquarters of a cocaine trafficking operation. Later that same day, the DEA seized two kilograms of cocaine, marijuana, drug paraphernalia, three handguns, and $69,184.00 in cash from Krecioch's residence.[1]

Pursuant to 21 U.S.C. § 881, the government initiated a forfeiture action against the aforementioned property. The DEA sent written notices of the forfeiture actions through certified mail to Krecioch's home, his business address, and, after he was incarcerated, to the Chicago Metropolitan Correctional Center. Krecioch pled guilty to various drug trafficking and firearm charges and was sentenced to ten years imprisonment.

Approximately five years after the forfeiture, Krecioch, *pro se*, brought a suit attacking all of the forfeitures. He argued that the forfeitures were ineffective because the DEA failed to provide actual notice to him in violation of the Due Process Clause of the Fifth Amendment. After the district court granted summary judgment in favor of the government, Krecioch appealed and won what might seem a Pyrrhic victory; we reversed the lower court's de-

---

[1] A more detailed overview of the underlying facts can be found at *Krecioch v. United States,* 221 F.3d 976, 978-80 (7th Cir. 2000).

cision as it related to the three handguns but affirmed as to the rest of the seized property.

Almost a year after we handed down this decision, Krecioch submitted a bill of costs for $3,359.00, pursuant to a provision of the Equal Access to Justice Act (EAJA) which permits costs to be awarded to the prevailing party in any action against the United States. 28 U.S.C. § 2412. Included in these costs was a claim for $2,800.00 for paralegal services. Krecioch specified that the paralegal services entailed "research [and] drafting motions." He also noted that the paralegal (a fellow inmate in the federal penitentiary) "represented" the case from beginning to end. The government argued that Krecioch was not entitled to attorney's fees as a *pro se* litigant. In addition, the government argued that its position in the underlying litigation was substantially justified, rendering the fee-shifting provision of the EAJA inapplicable.

In what might be considered another hollow victory, the district court found Krecioch entitled to costs amounting to $455.00 but denied the rest of the bill of costs. Krecioch filed a Rule 60(b) motion, seeking reconsideration of the district court's decision, but the court denied the motion in a minute order. This appeal follows.

## II. DISCUSSION

We review the district court's denial of a Rule 60(b) motion in a highly deferential fashion. The district court's order will stand unless we find an abuse of discretion and Krecioch carries a heavy burden in attempting to reverse the lower court's decision.

Krecioch makes his claim for a bill of costs under the EAJA. The purpose of the EAJA is to eliminate the financial disincentive for people to challenge unreasonable governmental actions. *See Sullivan v. Hudson*, 490 U.S. 877,

883-84 (1989). The relevant portions of the law are as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

> "Fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees.

28 U.S.C. § 2412(d)(2)(A).

To be eligible for a fee award under the EAJA, Krecioch must show: (1) that he was a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and (4) that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement. *Commissioner, INS v. Jean*, 496 U.S. 154, 158 (1990).

## A. *Krecioch's Classification of the Fees*

Krecioch claims that under the EAJA, he is entitled to the costs of $2,800.00 paid to a person who is trained as a paralegal. Krecioch attempts to argue that he incurred these costs through "a study and analysis of forfeiture

laws." This contradicts earlier descriptions of the services which he said constituted "researching [and] drafting motions" in the district court, appellate court, and the Supreme Court. It was only midway through the litigation that he attempted to recharacterize the paralegal fees as an expense for the "study and analysis of plaintiff's case." The district court found Krecioch's attempt "to re-characterize the $2,800 paralegal bill as a 'cost of study' unpersuasive." We do not think such a finding constitutes an abuse of discretion.

At some point, Krecioch realized his attempts to win attorney's fees as a *pro se* litigant was a loser. It was only then that he decided to rename these costs fees incurred for the "study and analysis of forfeiture laws."[2] We need only consider Krecioch's statements in his affidavit in which he swore that he hired the paralegal to "draft and type the complaint and other necessary motions and briefs." He also stated the paralegal "represented the case" throughout the litigation. This describes the activities of an attorney.

Krecioch points out that the district court never found the work reflected in the $2,800.00 bill unnecessary or unreasonable. The district court had no need to engage in such an analysis; it had already classified the costs as attorney's fees, making further consideration unnecessary. Fees for work done by paralegals can be awarded under the fee-shifting provision of the EAJA. *See Hirschey v. F.E.R.C.*, 777 F.2d 1, 6 (D.C. Cir. 1985). The fees incurred by Krecioch, according to his own multiple descriptions, were not however, for paralegal work. Nor could this work be described as "study and analysis," as envisioned by the EAJA. Any form of work, whether done by a clerk,

---

[2] Krecioch never attempts to defend or otherwise explain his recharacteriztion of the fees midway through the litigation.

paralegal, or attorney, involves some degree of study and analysis. If we were to adopt Krecioch's argument, then any work, regardless of its author or circumstances, could be described as study and analysis. We do not think Congress intended such a result. For these reasons, we find the fees incurred by Krecioch for the drafting of legal documents and motions may not be classified as costs of study and analysis as contemplated by the EAJA.

*B.* Pro Se *Litigants Recovering Attorney's Fees*

After determining that Krecioch is actually attempting to recover attorney's fees, we now consider whether Krecioch, as a *pro se* litigant, can do so. In *Kay v. Ehrler*, 499 U.S. 432, 435 (1991), the Court, although the question was not before it, noted that a *pro se* litigant who is not a lawyer is not entitled to attorney's fees in the context of 42 U.S.C. § 1988. In *Smith v. De Bartoli*, 769 F.2d 451, 453 (7th Cir. 1985), we ruled, as applied to 42 U.S.C. § 1988, that a *pro se* litigant who is not a lawyer is not entitled to attorney's fees.

Neither the Supreme Court nor this Court has addressed, however, whether *pro se* litigants may recover attorney's fees in the context of the EAJA. In *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994), the Second Circuit determined that the Supreme Court's decision in *Kay v. Ehrler,* 499 U.S. 432 (1991), should be applied in cases involving the EAJA. The Fifth Circuit in *Hexamer v. Foreness*, 997 F.2d 93, 94 (5th Cir. 1993), also determined that under the EAJA, attorney's fees are not available to *pro se* litigants. The Supreme Court has noted that the Equal Access to Justice Act is the "counterpart to § 1988 for violation of federal rights by federal employees." *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 89 (1991). In addition, the legislative history of the EAJA supports limiting the award of attorney's fees to litigants who have

retained an attorney. *See* H.R. Rep. No. 1418, 96th Cong., 2d Sess. 11, reprinted in 1980 Code Cong. & Adm. News 4984, 4988-89. "A primary purpose in enacting the EAJA, and particularly section 2412(d)(1)(A) was to remove the obstacle of litigation expenses, including attorney's fees, so that litigants may challenge unreasonable governmental action and vindicate their rights in court." *See also Demarest v. Manspeaker*, 948 F.2d 655, 656 (10th Cir. 1991).

We believe that denying the availability of attorney's fees to *pro se* litigants supplements the purposes of the EAJA, some of which were to encourage individuals to litigate adverse determinations and to remove the obstacles of litigation expense. A claimant who appears *pro se* defeats the very purposes underlying the fee-shifting provisions of this Act. Given these factors and the substantial amount of case law that has held *pro se* litigants cannot claim attorney's fees, *see*, *e.g.*, *Celeste v. Sullivan*, 988 F.2d 1069 (11 Cir. 1992); *Demarest v. Manspeaker*, 948 F.2d 655 (10th Cir. 1991); *Naekel v. Department of Transportation*, 845 F.2d 976 (Fed. Cir. 1988); *Merrell v. Block*, 809 F.2d 639 (9th Cir. 1987); *Crooker v. EPA*, 763 F.2d 16 (1st Cir. 1985), we join the other circuits in holding that attorney's fees are not available for *pro se* litigants under the EAJA.

### C. *Substantially Justified*

The government also argues that we could affirm the district court on the grounds that Krecioch was not entitled to recover any expenses under § 2412(d)(1)(a) because the United States was "substantially justified" in its litigation position. While we have already determined that Krecioch is not entitled to attorney's fees as a *pro se* litigant, we will briefly address the government's argument that its position was substantially justified. Under

§ 2412(d)(1)(A), a district court may award attorney's fees to a prevailing party only if the litigation position of the United States was not substantially justified. The government has the burden of proving that it was substantially justified in maintaining its position. *Blitz v. Donovan*, 740 F.2d 1241, 1244 (D.C. Cir. 1984). We review a district court's determination of whether a position meets this standard for an abuse of discretion, *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996).

While the EAJA does not define "substantially justified," the Court has held that the phrase means a position that is "justified in substance or in the main." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). A position that is "substantially justified" must have a "reasonable basis both in law and in fact." *Id*. This determination considers the government's position both in its underlying action and the litigation posture it took while defending the validity of that action in court. 28 U.S.C. § 2412(d)(2)(D).

Krecioch contends that the government knew beyond any doubt that it was violating the law and depriving him of his rights by forfeiting his weapons. However, Krecioch fails to recognize the process the government undertook to provide notice to Krecioch about the forfeiture of his property. The government methodically followed the requirements for giving proper notice. The DEA sent written notice of the forfeiture actions by certified mail to Krecioch's residence. *See Krecioch v. United States*, 221 F.3d 976, 979 (7th Cir. 2000). The DEA also mailed notices to Krecioch's business address and to the Chicago Metropolitan Correctional Center where he was incarcerated. *Id*. In addition, the DEA published notice of the forfeitures in the *USA Today* newspaper for three consecutive weeks. *Id*. Given the extent of the government's efforts and the methods it used in attempting to give Krecioch notice, we found that notice was adequate at the time it was sent, except as to the three handguns. The guns comprised, in

terms of monetary value, 1% of what he was seeking.[3] We should also note that the government sent notice by certified mail regarding the forfeiture of the guns, but sent them to Krecioch's residence four weeks after Krecioch had entered the Chicago Metropolitan Correctional Center. *Krecioch*, 221 F.3d at 981.

We believe that the government acted in good faith and attempted as closely as possible to satisfy the requirements for proper notice of the forfeiture.

The government contended throughout the litigation that notice via certified mail to Krecioch's residence was proper even if he did not receive actual notice as a result. The governments' position was also supported by precedent from other federal circuits. *See*, *e.g.*, *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996); *Sarit v. U.S. Drug Enforcement Admin.*, 987 F.2d 10, 14-15 (1st Cir. 1993). In our decision, we determined that written notice of forfeiture by certified mail to Krecioch's home address satisfied the requirements for due process, even if he did not receive actual notice. *Krecioch,* 221 F.3d at 981. Thus, this court and the district court adopted the government's position that notice sent by certified mail to an individual's residence was sufficient to satisfy the strictures of due process. There is no doubt, in light of the district court's ruling, and this court's affirmance, with respect to all of the forfeitures except the handguns, that the government's position was substantially justified.

---

[3] Upon remand, the government noted that the return of the weapons to Krecioch was against the law under 18 U.S.C. § 921. Thus, the district court entered judgment in favor of Krecioch for the $600.00 value he placed on the guns.

Accordingly, we AFFIRM the decision of the district court.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—1-2-03